UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASMINE L. MCGREW, CHIANTA C. JENKINS, and
FALLON M. BELL,

                      Plaintiffs,

v.                                                                    6:13-CV-792
                                                                         (GLS/TWD)

JAMES HOLT, Individually and as a police officer of the
City of Utica, New York, MARK RAHN, Individually and
as a police officer of the City of Utica, New York,
PATRICK MURPHY, Individually and as a police officer
of the City of Utica, New York, JOSHUA HARRINGTON,
Individually and as a police officer of the City of Utica, New York,
JOHN DOE, a fictitious name intended to represent one or more
Police Officers of the City of Utica, New York, whose identities
are unknown at present, and THE CITY OF UTICA, NEW YORK,

                      Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| STEPHEN L. LOCKWOOD, PC<br>*Counsel for Plaintiffs*<br>258 Genesee Street<br>Utica, NY 13501 | DANIEL N. CAFRUNY, ESQ. |
| CORPORATION COUNSEL,<br>CITY OF UTICA<br>*Counsel for Defendants*<br>One Kennedy Plaza<br>Utica, NY 13502 | ZACHARY C. OREN, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT and RECOMMENDATION

      Presently before the Court is Defendants' motion (Dkt. No. 46) for spoliation sanctions in

this action alleging civil rights violations and other claims. Plaintiffs oppose the motion. (Dkt. No. 47.) For the reasons that follow, the Court finds spoliation sanctions are not warranted under the circumstances presented here and recommends that Defendants' motion be denied.

I.  BACKGROUND

Generally, Plaintiffs allege improper conduct on the part of the Defendants arising from an incident on July 14, 2012. Plaintiffs' complaint alleges constitutional claims for excessive force and failure to intervene, and pendant state causes of action for assault, battery and intentional infliction of emotional distress. The Defendant Police Officers are named in their individual and official capacities.

More specifically, Plaintiffs allege that in the early morning hours of July 14, 2012, they were outside of a night club in the City of Utica when Utica police arrived and began to arrest people, including the Plaintiffs, for disorderly conduct and other charges. (Dkt. No. 29, ¶¶ 15-35.) Plaintiffs allege the Defendants used excessive force in making those arrests, among other allegations. *Id*. at ¶¶ 14-55. They filed a notice of claim pursuant to New York's General Municipal Law Section 50-h on or about August 3, 2012. (Dkt. No. 46-2.) At some point in the fall of 2012, Plaintiff Jasmine McGrew ("McGrew") received a video message from non-party Sharon Eddings which contained a video allegedly recorded at the scene of the arrests. (Dkt. No. 47-1, ¶¶ 3, 4.) McGrew had the video on her cell phone for a short period of time (until winter 2012) before her phone became inoperable; the phone's screen did not light up and the phone would not power on even after it was charged. *Id.* at ¶ 7. Plaintiff McGrew discarded the broken phone in the trash. *Id.* at ¶ 8. During the time she had the video on her phone when it was operable, she watched the one (1) minute video clip two (2) times, one of which was when

2

she showed the video to Plaintiff Chianta Jenkins' ("Jenkins") criminal defense counsel, Scott Kim, Esq. *Id.* at ¶¶ 4, 5.

Both Plaintiff McGrew and Attorney Kim indicate the video clip did not show any specific Plaintiffs or Defendants, the lighting was insufficient, and voices and screaming could be heard but no specific words were discernable or coherent. *Id.* at ¶ 5; Dkt. No. 47-2, ¶ 2. After watching the video, Attorney Kim "did not pursue the matter of the video further because in my opinion it had no value to the case either from the defense or prosecution perspective. Neither the defense nor the prosecution used this video during the criminal trail [sic]." Dkt. No. 47-2, ¶ 4.

In the course of discovery in this action, Defendants requested a copy of the video from Plaintiffs. (Dkt. No. 46-3 at 63.[1]) At that point, Plaintiff McGrew no longer had a copy of it due to her cell phone breaking as set forth above. (Dkt. No. 47, ¶¶ 6-8.) Plaintiffs' attorneys never saw the video in question, and were not able to obtain a copy of it from the Plaintiffs' criminal defense attorneys or the non-party witness Sharon Eddings. (Dkt. No. 42; Dkt. No. 47, ¶¶ 11, 14.) Hence this spoliation motion ensued wherein Defendants seek an adverse inference instruction as a result of Plaintiffs' failure to preserve the video. (Dkt. No. 46.)

## II. LEGAL STANDARD

In *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002) the Second Circuit held that:

> [a] party seeking an adverse inference instruction based upon the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were

---

[1] Page references to all Docket entries are to page numbers assigned by CM/ECF.

3

destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id.* at 107 (citation omitted). With regard to the first element, courts have found that a party anticipating litigation should refrain from deleting electronically stored information or destroying information that may be relevant to the litigation. *See, e.g., Sekisui American Corp. v. Hart*, 945 F. Supp. 2d 494, 497 (S.D.N.Y. 2013). The second element concerning a "culpable state of mind" can be "[s]atisfied by a showing that the evidence was destroyed knowingly, even without an intent to breach a duty to preserve it, or negligently." *Residential Funding Corp.*, 306 F.3d at 108 (internal punctuation, emphasis, and citations omitted). In determining the third element of relevance in this context, "[t]he party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." *Id.* at 109 (internal punctuation and citations omitted).

## III. DISCUSSION

Here, Plaintiff's do not dispute in their opposition to Defendants' motion that the "duty/obligation to preserve the cell phone video evidence had attached to Plaintiffs at all relevant times with regard to Defendants' motion for sanctions. . ." and therefore that issue is not before the Court. (Dkt. No. 47-3 at 5.) The only issues are whether Plaintiffs acted with a "culpable state of mind" in failing to produce the video and whether the missing video is "relevant" to Defendants' claim or defense such that a reasonable trier of fact would find that it would support that claim or defense.

4

### A. Culpable State of Mind

Defendants argue that Plaintiffs destroyed the video either intentionally or with gross negligence because they preserved photographs of their injuries, but did not preserve the video. (Dkt. No. 46-8 at 8.) Citing *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739 (8th Cir. 2004), Defendants assert that Plaintiffs acted in bad faith in "destroying" the video while maintaining photographs of their injuries as evidence "clearly favorable" to them. *Id.* at 9. Defendants argue that Plaintiffs "cherry-picked" which evidence to preserve, which demonstrates a culpable mind set thus fulfilling the second element necessary to obtain an adverse inference instruction.

However, the factual circumstances in *Stevenson* case regarding the voice tape at issue in that case are very different from the present case. In *Stevenson*, a negligence action involving a railroad grade crossing collision with an automobile, the defendant railroad destroyed the voice tape from the date of the accident between the train crew and dispatchers pursuant to its routine policy. *Stevenson*, 354 F.3d at 745. In finding bad faith in the destruction of the tape, the Eighth Circuit noted that the defendant railroad knew the importance of the voice tape from prior accidents that resulted in serious injury; the railroad preserved other types of evidence from the accident at issue but not the voice tape; and the railroad was careful to preserve a voice tape in other cases where the tape proved to be beneficial to the railroad. *Id.* at 748.

Initially, I note here that the Plaintiffs did not destroy the video. Rather, it was contained on an electronic device that became inoperable through no fault of the Plaintiffs. There is no proof that the video was deliberately or even negligently deleted from the phone, or that the phone was deliberately or negligently broken. Further, the individual Plaintiffs are not a large

5

company frequently involved in litigation such as the defendant railroad in *Stevenson* and therefore would not necessarily understand the requirement to preserve the video, especially where Plaintiff Jenkins' criminal defense attorney, and apparently the assistant district attorney, did not think the video was of sufficient evidentiary value in the corresponding criminal matters given its poor visual and audio quality. (Dkt. No. 47-2, ¶¶ 2-4.) On the "continuum of fault ranging from innocence through the degrees of negligence to intentionality" in determining a culpable state of mind, I find this case falls on the innocence side of the spectrum. *Residential Funding Corp*., 306 F.3d at 108 (internal punctuation and citations omitted). Because Defendants have failed to show the necessary second element that Plaintiffs had a culpable state of mind in the loss of the video, I recommend that Defendants' motion for spoliation sanctions in the form of an adverse inference instruction be denied.

  **B.**  **Relevance**

The last element of a spoliation claim requires the non-spoliating party to establish that the destroyed materials were relevant to its claims or defenses. *Residential Funding Corp*., 306 F.3d at 108. Relevance may be assumed where the breaching party acted with gross negligence or bad faith, or willfully destroyed evidence. *Id*. at 109; s*ee also Sekisui,* 945 F. Supp. 2d at 504 (citation omitted). However, where a spoliating party has acted only negligently, the moving party must make a showing that the lost materials were relevant. *Id.* at 108; *Sekisui,* 945 F. Supp. 2d at 505.

Having found that Defendants failed to show that Plaintiffs had a culpable state of mind, I need not reach the issue of relevance. However, even if Plaintiff McGrew's actions in failing to otherwise copy or preserve the video before her cell phone became inoperable were to be

construed as negligent, Defendants have not made a sufficient showing that the video satisfies the relevance element.

For purposes of this element, relevance "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Id*. at 108-09 (citation omitted). To find the evidence at issue relevant for purposes of granting an adverse inference instruction, courts look at "whether there is any likelihood that the destroyed evidence would have been of the nature alleged by the party affected by its destruction." *Kronisch v. U.S.*, 150 F.3d 112, 127 (2d Cir. 1998); *see also Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 112 (E.D.N.Y. 2012) (moving party "must show through extrinsic evidence that the destroyed evidence would have been favorable to its case.").

In arguing relevance has been met, Defendants articulate reasons why the missing video would be germane to a case where Defendants allegedly used excessive force. For example, Defendants note that two of the Plaintiffs told their criminal defense attorneys about the video which indicates their awareness that the video was relevant. (Dkt. No. 46-8 at 14.) Defendants also argue that the video and audio of Plaintiff Jenkins' arrest may show that the police officers used reasonable force for the circumstances existing. *Id.* at 13, 15. These arguments fail.

Plaintiffs are lay persons and the fact that two of them showed the video to their criminal attorneys does not meet the relevance showing necessary to obtain spoliation sanctions. Defendants are obligated to show that the video would have been favorable to their case, yet they have not demonstrated nor it is apparent beyond doubt that the video would show the police officers used reasonable force. To infer Plaintiffs' belief in the relevance of the video because they informed their criminal attorneys of its existence could actually show that Plaintiffs believed

7

the video was favorable to their case, not necessarily to the Defendants' case.

Additionally, by the account of Plaintiff Jenkins' criminal defense counsel, Scott Kim, the video was very dark, and showed "[g]rainy shapes moving, females screaming incoherently and a lot of dust being kicked up . . ." and he "could not discern any identities or even distinguish any police uniforms in the video." (Dkt. No. 47-2, ¶ 2.) By the account of Plaintiff McGrew, "no individuals could be seen at all on the video," "the lighting was not good," and "voices could be heard but no words could be understood." (Dkt. No. 47-1, ¶ 5. Plaintiff Jenkins indicated that "all you could hear was the people who were recording [the video] and everyone saying . . . they had them on camera and stuff. Just yelling at the cops, people around the parking lot." (Dkt. No. 46-3 pp. 63-64.) Defendants assert that these descriptions of the contents of the video show that the Defendants had to use an objectively reasonable force to settle an unruly crowd and therefore it is relevant. (Dkt. No. 46-8 at 14-15.) While Defendants' assertion is possible, it is equally possible that those descriptions of the contents of the subject video affirm Plaintiffs' claims of excessive force. In other words, the video could have been favorable to either party's case, and therefore does not satisfy the relevance element warranting a spoliation sanction in the form of an adverse inference. *Simoes v. Target Corp.,* No. 11 CV 2032 (DRH)(WDW) 2013 WL 2948083, * 7, 2013 U.S. Dist. LEXIS 83896, *21 (E.D.N.Y. June 14, 2013) (relevance element not satisfied where missing surveillance video could have been favorable to either party's case).

IV.     **CONCLUSION**

Based upon the circumstances presented, I conclude that the issuance of an adverse inference instruction is not appropriate. The video evidence was not destroyed by Plaintiffs with the requisite culpable state of mind and the relevancy of it to Defendants appears purely

8

speculative and conclusory inasmuch as it could have been favorable to both Plaintiffs and Defendants. Accordingly, it is hereby respectfully

**RECOMMENDED,** that Defendants' motion for a finding of spoliation and sanctions in the form of an adverse inference (Dkt. No. 46) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: December 9, 2014
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge