UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASMINE L. MCGREW et al.,

                Plaintiffs,                6:13-cv-792
                                                     (GLS/TWD)

        v.

JAMES HOLT et al.,

                Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Office of Stephen L. Lockwood | STEPHEN L. LOCKWOOD, ESQ. |
| 285 Genesee Street | DANIEL N. CAFRUNY, ESQ. |
| Utica, NY 13501 | |
| | |
| **FOR THE DEFENDANTS:** | |
| Office of Corporation Counsel | JOHN P. ORILIO, ESQ. |
| City of Utica | MARK C. CURLEY, ESQ. |
| One Kennedy Plaza | MERIMA SMAJIC, ESQ. |
| Utica, NY 13502 | ZACHARY C. OREN, ESQ. |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiffs Jasmine L. McGrew, Chianta C. Jenkins, and Fallon M. Bell commenced this action against defendants James Holt, Mark Rahn, Patrick Murphy, and Joshua Harrington, all in their official and individual capacities,

as well as the City of Utica, New York and a John Doe defendant, pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988 alleging violations of the Fourth Amendment for excessive force, and claims pursuant to New York state law for assault, battery, and intentional infliction of emotional distress. (*See generally* Am. Compl., Dkt. No. 29.) Pending before the court is defendants' motion for summary judgment. (Dkt. No. 50.) For the reasons that follow, defendants' motion is granted in part and denied in part.

## II. **Background**[1]

On July 14, 2012, at approximately 2:30 A.M., plaintiffs were in the parking lot of the Planet Blue Gentleman's Club in Utica, New York. (Defs.' Statement of Material Facts (SMF) ¶ 15, Dkt. No. 50, Attach. 19; Dkt. No. 51, Attach. 2 at 22.) At the time, the parking lot was "filled with people" and at least two individuals began "arguing." (Defs.' SMF ¶¶ 17-18, 26, 41.) A short time later, Utica police officers, including defendants here, arrived at the scene, and several fights had broken out. (Dkt. No. 51, Attach. 5 at 10-11.) The police gave verbal commands for everyone in the parking lot to leave, and subsequently began arresting individuals in the parking lot, including plaintiffs. (*Id.* at 12-13, 21, 50.) The parties largely dispute what

---

[1] Unless otherwise noted, the facts are not in dispute.

transpired next.

**A.  Bell**

According to Bell, she was simply attempting to explain to police officers that she was looking for a friend so that they could leave the area. (Dkt. No. 51, Attach. 3 at 45, 47-48.)  Officers responded by using a racial slur towards her, (*id.* at 50), and then she was slammed to the ground face first by Rahn and Holt, (*id.* at 53-55; Dkt. No. 51, Attach. 2 at 37-38).  Rahn grabbed her by the arms while Holt pulled her hands behind her back and slammed her down to the gravel surface.  (Dkt. No. 51, Attach. 3 at 50, 53-55.)  Murphy contends that he subdued Bell by "us[ing] a soft hand come along in an attempt to restrain Bell," and then "used a takedown to bring [her] down on the ground" after she had refused to follow his instruction to place her hands behind her back.  (Dkt. No. 51, Attach. 18 at 6.)

As a result of the incident, Bell reported to the emergency room, indicating "moderate" pain which she rated at eight out of ten.  (Pls.' SMF ¶ 85, Dkt. No. 51, Attach. 19; Dkt. No. 50, Attach. 12 at 4, 19.)  She was unable to raise her arm above ninety degrees, (Pls.' SMF ¶ 86; Dkt. No. 50, Attach. 12 at 5), so she was issued a sling for her arm, (Pls.' SMF ¶ 87; Dkt. No. 50, Attach. 12 at 3).  She also had cuts on her head and forearm.

(Pls.' SMF ¶ 88.) Bell felt as though she had a shoulder sprain, (Dkt. No. 51, Attach. 11 at 32), and, because of her shoulder pain, she was referred to a bone specialist, though she never followed up with a specialist, (*id.* at 36). Her shoulder hurt for two months after the incident. (*Id.*)

Ultimately, Bell was charged with resisting arrest, *see* N.Y. Penal Law § 205.30, and disorderly conduct, *see* N.Y. Penal Law § 240.20. (Dkt. No. 50, Attach. 7 at 2.) Bell pleaded guilty to the disorderly conduct charge in satisfaction of both charges against her. (*Id.*; Defs.' SMF ¶ 13.)

**B.   McGrew**

McGrew testified that, on the night in question, she heard a "commotion" on the other side of the parking lot while she was "looking for [her] friends," and that when police showed up, they immediately started "getting in people's faces." (Dkt. No. 51, Attach. 2 at 27, 30.) She was told by police to move out of the way, (*id.* at 32-33), and was then, without warning, "slammed" to the ground twice, (*id.* at 34-41). She testified that she was then handcuffed and dragged around the parking lot by the handcuffs to a police car. (*Id.* at 43-45.)

McGrew also sought medical attention, reporting a shoulder injury and "moderate" pain which she rated at a six out of ten. (Pls.' SMF ¶ 80;

4

Dkt. No. 51, Attach. 14 at 4, 6, 16.) An x-ray of her left shoulder revealed "[n]o fracture or dislocation." (Dkt. No. 50, Attach. 14 at 12.) She suffered abrasions to her left shoulder and forearm, and both knees. (Pls.' SMF ¶ 81.) Her right shoulder pain lasted several months. (*Id.* ¶ 83; Dkt. No. 51, Attach. 2 at 50.)

McGrew was ultimately charged with disorderly conduct. (Dkt. No. 50, Attach. 8 at 2.) After a bench trial, she was found guilty of that charge. (*Id.*; Dkt. No. 51, Attach. 5 at 87.)

## C. <u>Jenkins</u>

According to Jenkins, she was also looking for her friends so that she could leave the club. (Dkt. No. 51, Attach. 4 at 30-31.) At some point, she observed an officer slam McGrew to the ground, and tried to explain to officers that McGrew had not done anything wrong. (*Id.* at 34-39.) Immediately thereafter, she was "hit in the face" by Rahn, from behind and "out of nowhere," which "knocked [her to] the ground." (*Id.* at 40.) She stated that Rahn hit her in the right cheekbone with his fist, after which several officers jumped on top of her and others "were kicking [her] on [her] sides" and twisting her arms. (*Id.* at 41-42.) She was then "dragg[ed]" across the length of the parking lot. (*Id.* at 47.) Rahn denied punching or

5

kicking Jenkins, (Dkt. No. 51, Attach. 6 at 58), and, instead, reported that he "delivered one open hand strike to Jenkins['] chest/face area to push her back," (Dkt. No. 51, Attach. 18 at 5), because she was charging at him with a fist in the air as he was attempting to arrest McGrew, (Dkt. No. 51, Attach. 6 at 51-52).

Shortly thereafter, Jenkins sought medical treatment, (Pls.' SMF ¶ 73), where she reported "mild" pain which she rated a ten out of ten, (*id.* ¶ 74; Dkt. No. 50, Attach. 16 at 6, 18). Jenkins had abrasions on her right shoulder, left arm, and both knees, as well as right shoulder pain. (Pls.' SMF ¶ 75.) Although an x-ray of her shoulder was negative for broken bones or dislocation, she was issued a sling for her shoulder pain. (*Id.* ¶¶ 76-77; Dkt. No. 50, Attach. 16 at 16, 19.)

Stemming from the incident, Jenkins was charged with obstructing governmental administration, *see* N.Y. Penal Law § 195.05, disorderly conduct, and resisting arrest. (Dkt. No. 50, Attach. 4 at 2.) After a jury trial, she was found guilty of resisting arrest, acquitted of obstructing governmental administration, and the disorderly conduct charge was dismissed. (*Id.*; Dkt. No. 50, Attach. 6 at 218.)

Plaintiffs then commenced this action, alleging that defendants used

6

excessive force during their July 14, 2012 arrests. (*See generally* Am. Compl.)

## III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion[2]

### A. Excessive Force

Defendants argue that plaintiffs' excessive force cause of action should be dismissed because it is barred by the *Heck*[3] doctrine. (Dkt. No. 50, Attach. 20 at 3-7.) Specifically, defendants contend that a judgment in plaintiffs' favor on their excessive force claims would necessarily attack the validity of their underlying criminal convictions, and thus such claims are

---

[2] At the outset, the court notes that, in their response to defendants' summary judgment motion, plaintiffs have indicated that they concede to the dismissal of the Doe defendant and any municipal liability claim against the City of Utica. (Dkt. No. 51, Attach. 20 at 21-22.) Accordingly, the Doe defendant and the City of Utica are dismissed, and the Clerk is directed to terminate them as parties to this action.

[3] *See Heck v. Humphrey*, 512 U.S. 477 (1994).

precluded under *Heck*. (*Id.*) Alternatively, defendants argue that they are entitled to summary judgment on the merits of plaintiffs' excessive force claims because plaintiffs suffered only *de minimis* injuries. (*Id.* at 7-19.) In response, plaintiffs argue that their claims are not barred by *Heck* because their excessive force claims do not have the requisite relationship with their underlying criminal convictions for resisting arrest and disorderly conduct to mandate preclusion. (Dkt. No. 51, Attach. 20 at 9-15.) Further, plaintiffs assert that they have "sustained numerous and severe injuries" that are more than merely *de minimis*, and/or that questions of fact prevent the entry of summary judgment here. (*Id.* at 15-18.) For the reasons that follow, the court agrees with plaintiffs, and defendants' motion with respect to these arguments is denied.

    1.    *Heck Doctrine and Collateral Estoppel*

Pursuant to the Supreme Court's decision in *Heck v. Humphrey*, certain § 1983 suits that relate to an underlying criminal conviction or sentence are barred. *See* 512 U.S. 477, 486-87 (1994). Specifically, the Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence

> invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id. Heck*, however, does not require dismissal of those claims which, if adjudicated in favor of the plaintiff, would not necessarily invalidate her conviction or sentence. *Id.* As pertinent here, it is "well established that an excessive force claim does not usually bear the requisite relationship under *Heck* to mandate its dismissal." *Smith v. Fields*, No. 95 CIV. 8374, 2002 WL 342620, at *4 (S.D.N.Y. Mar. 4, 2002).

In support of their argument that plaintiffs' excessive force claims[4] are barred here in light of their underlying criminal proceedings, defendants do not cite any Second Circuit decision that would bind this court, instead relying on two district court cases that are inapposite to the facts at issue here. (Dkt. No. 50, Attach. 20 at 3-5.) Defendants also contend that,

---

[4] Defendants' argument on this point appears limited to Jenkins and the relationship that her underlying conviction for resisting arrest has with her current excessive force claim. (Dkt. No. 50, Attach. 20 at 5-7.) With respect to McGrew and Bell, defendants merely state, without any analysis or citation to authority, that "[p]laintiffs should not be allowed to proffer any facts which call into question the[ir] criminal charges," as they are "precluded under *Heck*." (*Id.* at 7). For the same reasons discussed herein, the court finds that this argument is without merit.

9

because a few passing references were made in Jenkins' criminal trial to the use of force against her, excessive force was "put . . . at issue," and therefore "a finding of excessive force under § 1983 would imply invalidity of the resisting arrest conviction," mandating dismissal here. (*Id.* at 5-7.) The court disagrees.

With respect to defendants' *Heck* argument, the court is not persuaded that there is any basis here to divert from the "well established" principle "that an excessive force claim does not usually bear the requisite relationship under *Heck* to mandate its dismissal." *Smith*, 2002 WL 342620, at *4 (citing *Jackson v. Suffolk Cnty. Homicide Bureau*, 135 F.3d 254, 256-57 (2d Cir. 1998)); *see Dawkins v. City of Utica, N.Y.*, No. 91-CV-867, 1994 WL 675047, at *4 (N.D.N.Y. Nov. 28, 1994) ("[R]ecovery under a theory of excessive force in the arrest does not necessarily impugn plaintiff's convictions for the underlying offenses. Since plaintiff may be both guilty and a victim of excessive force, *Heck* does not mandate dismissal of his . . . cause of action[] for excessive force."). In fact, the Second Circuit has explicitly stated that "many violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction," noting, as particularly relevant here,

that "when a suspect sues his arresting officer for excessive force, a § 1983 suit may proceed even if the suspect is ultimately convicted of resisting arrest." *Poventud v. City of N.Y.*, 750 F.3d 121, 132 (2d Cir. 2014); *see Hunter v. Town of Shelburne*, No. 5:10-CV-206, 2012 WL 4320673, at *7 (D. Vt. Sept. 19, 2012) ("The Second Circuit has held, however, that 'a lawful arrest . . . may be accompanied by excessive force,' and that 'the jury's return of a guilty verdict in state court for resisting arrest . . . does not necessarily preclude a subsequent claim of excessive force in federal court.'" (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000))). Accordingly, plaintiffs' claims are not barred by *Heck*.

Similarly, collateral estoppel[5] does not dictate that defendants' motion be granted either. As the Second Circuit has held, "[i]t is clear . . . that there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating the arrest." *Sullivan*, 225 F.3d at 166. "Indeed, a conviction for resisting arrest, which under New York law requires proof that the defendant 'intentionally prevent[ed] or attempt[ed] to

---

[5] This court must apply the rules of collateral estoppel of the state in which the prior judgment was rendered, here, New York. *See Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000); *see also* 28 U.S.C. § 1738.

11

prevent a police officer or peace officer from effecting an authorized arrest of h[er]self or another person,' N.Y. Penal Law § 205.30, 'is not incompatible with [a] claim for excessive force.'" *Negron v. Jacobs*, No. 1:11-cv-1385, 2013 WL 5442281, at *4 (N.D.N.Y. Sept. 27, 2013) (quoting *Sullivan*, 225 F.3d at 166); *see Tracy v. Freshwater*, 623 F.3d 90, 100 (2d Cir. 2010) ("[T]he fact that [the plaintiff] was convicted of resisting arrest does not appear to present an 'inherent conflict' with his claim that [the defendant] exerted unreasonable force in effecting that arrest.").[6] Therefore, "[a] claim of excessive force would not be precluded by the plaintiff's prior convictions for resisting arrest . . . unless facts actually determined in h[er] criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit." *Sullivan*, 225 F.3d at 166.

Despite defendants' arguments, the criminal jury found only that the elements of the crime of resisting arrest were satisfied—none of which concern the use of force by a police officer—and did not necessarily find that the amount of force used by the officers was reasonable. Briefly, there

---

[6] The same can be said of McGrew's conviction and Bell's guilty plea of disorderly conduct pertaining to their "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof" by "engag[ing] in fighting or in violent, tumultuous or threatening behavior." N.Y. Penal Law § 240.20(1).

12

is no indication in the record that the jury in Jenkins' underlying criminal trial made any explicit factual findings with respect to excessive force, or that any specific factual findings were made in McGrew and Bell's underlying criminal proceedings that would be binding on their excessive force claims here. This is distinguishable from *Hunter*, a case relied on by defendants, where "the jury was plainly instructed [on] excessive force," and the court held that the jury had thus determined the issue of excessive force. 2012 WL 4320673, at *8. Here, there was no such instruction, nor was there an "assertion of a particular affirmative defense or use of a special verdict form [that] might indeed make clear that a criminal jury necessarily decided factual and legal issues such as those remaining in this case." *Tracy*, 623 F.3d at 100. Defendants' argument is therefore unavailing.

    2.    *De Minimis Injury*

Turning to the merits of plaintiffs' claims, "[i]n order to establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, [a] plaintiff [ ] must establish that the government interests at stake were outweighed by the nature and quality of the intrusion on [the plaintiff's] Fourth Amendment interests." *Barlow v.*

13

*Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 26 (2d Cir. 2011) (internal quotation marks and citation omitted). "'In other words, the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time.'" *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

"[C]laims of excessive force arising in the context of an arrest under the Fourth Amendment's objective reasonableness test," are analyzed "paying 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Phelan v. Sullivan*, 541 F. App'x 21, 24 (2d Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The entirety of the record must be evaluated "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396)); *accord Tracy*, 623 F.3d at 96. Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the

Fourth Amendment.'" *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 396).

"[T]he Second Circuit and district courts in the Circuit recognize the concept of *de minimis* injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Jackson v. City of N.Y.*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). "'[S]hort-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth'" have been held to be *de minimis* and, thus, unactionable. *Id.* (quoting *Lemmo v. McKoy*, No. 08-CV4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011)). However, "the fact that [the p]laintiff may not have sustained serious long lasting harm is not dispositive." *Graham v. City of N.Y.*, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013).

Defendants argue that they are entitled to summary judgment because any force used was reasonable and because plaintiffs suffered only minor injuries. (Dkt. No. 50, Attach. 20 at 7-19.) The parties have provided conflicting accounts as to whether defendants initiated the use of

15

force, how much force was used by each, whether any force used was necessary, and the extent of plaintiffs' injuries. For example, Murphy[7] indicated that he "used a soft hand come along in an attempt to restrain Bell," and ultimately "used a takedown to bring Bell down on the ground." (Dkt. No. 51, Attach. 18 at 6.) However, Bell contends that she was lifted off the ground and slammed to the gravel surface face first by Holt and another unknown officer, while her arms were being held behind her back. (Dkt. No. 51, Attach. 3 at 47-48, 50, 53-55.) Similarly, McGrew asserts that she was slammed to the ground twice, handcuffed, and dragged around the parking lot by the handcuffs to a police car, even though she had not been fighting with anyone, (Dkt. No. 51, Attach. 2 at 34-37, 39-41, 43-45), while Rahn maintains that he never threw anyone to the ground, and that McGrew was simply placed in handcuffs because she was fighting with

---

[7] In their motion, defendants argue that Murphy is entitled to summary judgment and should be dismissed from the case because plaintiffs' deposition testimony does not identify him as one of the officers who used force on them. (Dkt. No. 50, Attach. 20 at 19-20.) Defendants further note that "[t]here is no deposition testimony for . . . Murphy because [p]laintiffs failed to conduct any depositions in this matter," and therefore it would be "impossible[] to have trial against . . . Murphy when the only testimony concerning his use of force is his own." (*Id.* at 20 & n.10.) Defendants are seemingly attempting to argue that Murphy is entitled to summary judgment because there is no record evidence demonstrating his personal involvement in the incident in question. However, plaintiffs have provided Murphy's police report, (Dkt. No. 51, Attach. 18 at 6), which would support a finding that he was, in fact, involved in the allegedly unlawful use of force, (Pls.' SMF ¶¶ 70, 71). Thus, Murphy has not demonstrated that he is entitled to judgment as a matter of law for lack of personal involvement.

others in the parking lot after he gave verbal commands to disperse, (Dkt. No. 51, Attach. 5 at 17, 21.) Lastly, Jenkins testified that she was hit in the face "out of nowhere" with a fist and dragged on the ground across the parking lot. (Dkt. No. 51, Attach. 4 at 40-41, 47.) Both Rahn and Holt denied punching Jenkins and dragging her across the parking lot, instead indicating that she was escorted, on foot, to a police car because she had charged at an officer in an attempt to interfere with an arrest. (Dkt. No. 51, Attach. 6 at 51-52, 58, 62, 93, 100.)

Resolution of these conflicting versions of the relevant events, including the severity of plaintiffs' resulting injuries, is a matter for the jury and is not properly decided by a court on summary judgment. Although defendants characterize plaintiffs' harm as nothing more than "abrasions and contusions," and thus argue that they have suffered no actionable injury, (Dkt. No. 50, Attach. 20 at 12-14, 15-19), plaintiffs have provided evidence of more substantial harm that is enough to survive summary judgment. *See Hayes v. N.Y.C. Police Dep't*, 212 F. App'x. 60, 62 (2d Cir. 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising."); *Lemmo*, 2011 WL 4592785, at *8 ("[A] jury may consider the lack of serious injury as evidence that the

17

implemented force was not excessive." (internal quotation marks and citation omitted)). Although defendants further argue that plaintiffs were resisting, and thus the use of force was reasonable, (Dkt. No. 50, Attach. 20 at 11, 14-15, 17), this is ultimately a question for the jury. *See Sullivan*, 225 F.3d at 165-66 ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit."). Accordingly, defendants' motion for summary judgment is denied.[8]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 50) is **GRANTED IN PART** and **DENIED IN PART** as follows:

---

[8] Defendants also contend that they are entitled to qualified immunity. (Dkt. No. 50, Attach. 20 at 20-23.) Because "[s]ummary judgment should not be granted on the basis of a qualified immunity defense premised on an assertion of objective reasonableness unless the defendant 'show[s] that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law,'" *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (quoting *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001)), that defense is unavailable here in light of the factual disputes highlighted above.

With respect to plaintiffs' state law claims, defendants argue that "if the excessive force claim(s) fail," then the remainder of the claims should be dismissed as "derivative," or the court should decline to exercise its supplemental jurisdiction. (Dkt. No. 50, Attach. 20 at 27.) However, given that the excessive force claim survives summary judgment, this argument is of no moment.

**GRANTED** with respect to the claims against the John Doe defendant and the City of Utica, and the claims against those defendants are **DISMISSED**; and

**DENIED** in all other respects; and it is further

**ORDERED** that the Clerk terminate the John Doe defendant and the City of Utica as parties to this action; and it is further

**ORDERED** that the case is trial ready and the Clerk shall issue a trial scheduling order in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 20, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court